BOROUGH OF RIDGEFIELD, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, ET ALS., PLAINTIFFS, v. JOHN A. KERVICK, TREASURER OF THE STATE OF NEW JERSEY, ET ALS., DEFENDANTS.

Superior Court of New Jersey
Law Division

Decided January 13, 1970.

*Mr. John A. Schepisi* appeared for Borough of Ridgefield (*Messrs. Breslin & Monaghan,* attorneys).

*Mr. Charles A. Landesman* appeared for defendants (*Mr. Arthur J. Sills,* Attorney General of New Jersey, attorney).

*Mr. Frank A. Carlet* appeared for City of Clifton (*Mr. Arthur J. Sullivan, Jr.* City Counsel, attorney).

*Mr. Robert S. Moraff* appeared for Township of Wayne.

*Mr. Louis Wallisch, Jr.* appeared for Township of West Milford.

*Mr. Lawrence T. Isenberg* appeared for Borough of Pompton Lakes.

*Mr. Bruce M. Schragger* appeared for Township of Ewing.

*Mr. Douglas C. Borchard, Jr.* appeared for Borough of Hawthorne.

*Mr. Stephen R. Spector* appeared for Borough of Dumont and Borough of Rochelle Park. (*Messrs. Gross and Gross*, attorneys).

*Mr. James V. Segretto* appeared for Borough of Haledon.

Mr. *Allan M. Harris* appeared for Borough of West Paterson (*Mr. J. Mortimer Rubenstein*, attorney).

*Mr. John M. Running* appeared for Borough of Ringwood.

*Mr. Edward F. Weiss* appeared for Borough of North Haledon.

*Mr. Louis Schwartz* appeared for Borough of Totowa.

*Mr. Nathan Bernstein* appeared for Borough of Wanaque.

*Mr. Sam Weiss* appeared for City of Newark.

SIMPSON, J. C. C. (temporarily assigned). In these four consolidated cases a number of municipalities and one individual taxpayer challenge the constitutionality of *N. J. S. A.* 54:11*D*–7. This statute is part of the so-called business personal property tax replacement program. Pursuant to *N. J. S. A.* 54:11*D*–1 the revenues from the unincorpo-

rated business tax, the state-assessed tax on business personal property, the retail gross receipts tax and a portion of the corporation business tax are distributed to the municipalities of New Jersey "in replacement of the revenues derived by such municipalities from the local taxation of personal property used in business."

There is no objection, constitutional or otherwise, to the revenue replacement principle, or the manner of determining and distributing the amounts thereof. The dispute concerns a portion of *N. J. S. A.* 54:11D–7 which provides:

> For the purpose of apportioning the amounts to be raised in the respective taxing districts of the county under Revised Statutes 54:4–49, the county board of taxation shall, for each taxing district, include in the equalization table for the county the assumed assessed value of the property represented by the money received by each taxing district pursuant to the provisions of this act.
>
> Commencing with the tax year 1969 and thereafter the assumed assessed value of such property in each taxing district shall be determined by the county board of taxation in the following manner: (a) the amount of money received by each taxing district during the preceding tax year pursuant to the provisions of this act, shall be divided by the general tax rate of the taxing district for such preceding tax year to obtain an assumed assessed value of such property; (b) this assumed assessed value shall be divided by the fraction produced by dividing the aggregate assessed value by the aggregate true value of the real property, as determined by the county board of taxation for equalization purposes in the current tax year, exclusive of Class II railroad property, in the taxing district; and (c) the resulting quotient shall be included in the net valuation of each taxing district on which county taxes are apportioned.

Plaintiffs contend that the process whereby the "assumed assessed values" of their replacement revenues are calculated for inclusion in the equalization tables by the county boards of taxation in arriving at apportionment valuations for county tax purposes, is unconstitutional. Defendants are four county boards of taxation, the Director of the Division of Taxation, and some municipalities that benefit from the current application of the statute.

A number of schedules, containing many figures and percentages, were introduced into evidence by the City of Clifton.

This municipality in 1969 received $2,630,916. in replacement revenues, or 33.0689% of the total for all municipalities in Passaic County. For the same year Clifton paid $728,527, or 45.5263% of the total Passaic County taxes allocated to the "equalized assumed assessed value" of replacement revenues of the municipalities in that county. In addition, the following significant figures appear for that city:

| | 1. Percentage share of county taxes allocated to real property | 2. Percentage share of county taxes allocated to personal property | 3. Percentage share of total county taxes | 4. General tax rate | 5. Ratio aggregate assessed to aggregate true value of real property |
|---|---|---|---|---|---|
| 1964 | 25.2430 | 45.2242 (1) | 27.5585 | $ 2.82 | 99.76 |
| 1965 | 24.6966 | 32.2686 (2) | 25.2657 | 1.98 (4) | 99.07 |
| 1966 | 23.9710 | 33.2194 (2) | 24.6173 | 2.00 (4) | 94.98 |
| 1967 | 23.8944 | 33.3995 (2) | 24.5428 | 2.26 (4) | 92.65 |
| 1968 | 23.9309 | 37.1101 (2) | 24.4869 | 2.49 | 88.34 |
| 1969 | 23.7392 | 45.5263 (3) | 25.3212 | 2.64 | 85.86 |

1 Based upon "unequalized" valuations of business personal property.
2 Based upon "equalized" valuations of business personal property.
3 Based upon "equalized assumed assessed value" of replacement revenues received under *N. J. S.* 54:11D–1 et seq.
4 Applicable to all except Business Personal Property, the rates for which were $3.56 for 1967, $3.00 for 1966, and $3.12 for 1965.

There was undisputed evidence that Passaic County "mirrors" the other counties of New Jersey, except for a lack of resort communities, in that it contains old and new cities, suburbs and semi-rural areas. Counsel stipulated that in 1964 the tax assessors of Pasasic County did not assess business personal property at 100% of true value and that, in fact, they assessed at varying degrees thereof. Clifton's expert and assessor, Albert J. Greene, Jr., concluded that the foregoing figures show that for the City of Clifton the result of *N. J. S. A.* 54:11D–7 was an assumed assessed value of replacement revenues bearing a ratio to the total thereof in Passaic County approximately as did unequalized business personal property aggregate valuations in 1964. There was

proof also that Clifton used 1964 as its base year for the determination of minimum replacement revenues pursuant to *N. J. S. A.* 54:11D–2, and that some of the other 15 municipalities in Passaic County used each of the possible base years 1964, 1965, 1966 and 1967 for the calculation thereof.

Needless to say, Greene was of the opinion that application of *N. J. S. A.* 54:11D–7 resulted in substantially discriminatory and unequal treatment of taxpayers and taxing districts. He also claimed these results could be avoided in a number of ways, and illustrated three of them. Not unexpectedly, those municipalities for whom application of the statute results in a relatviely high percentage of replacement revenues going to the counties for county tax purposes, became plaintiffs in these cases, while those that apparently benefited from the formula joined the county boards and Director of Taxation as defendants. In all cases, however, the dollar amount of replacement revenues exceeded the amount paid by a municipality in county taxes which was calculated upon the equalized assumed assessed value of replacement revenues. The real complaint of plaintiffs is that the application of the statute is not as advantageous to them as it is to other municipalities. While the column 3 figures, above, indicate that the over-all effect of the challenged statute is very slight, the column 2 figures and a comparison of the column 1 figures with those of column 3 do show that its application to Clifton results in an increase in that city's share of county taxes. The statute is said to violate the tax clause of the *New Jersey Constitution* (1947) and the equal protection of law clause of the Fourteenth Amendment to the *United States Constitution.*

Plaintiffs carry a heavy burden of overcoming the presumption of constitutionality of *N. J. S. A.* 54:11D–7, *Thomas v. Kingsley,* 43 *N. J.* 524, 534 (1965); indeed, the presumption is so strong that

"a legislative act will not be declared void unless its repugnancy to the Constitution is clear beyond a reasonable doubt. *Harvey v. Essex County Board of Freeholders,* 30 *N. J.* 381, 388 (1959).

■ The purpose of *N. J. S. A.* 54:11D-7 is readily apparent, when read together with *N. J. S. A.* 54:11D-1 *et seq.* It seeks to convert the replacement revenues, received by the municipalities, into assets to be "equalized" with real property in the municipalities and included with the aggregate valuations thereof for apportionment of county taxes. The capitalization of "in lieu" revenues, and the equalization thereof with real property assessed valuations, for purposes of allocating the burden of county taxes, is a familiar concept. *N. J. S. A.* 55:14J-30; *N. J. S. A.* 40:55C-65. While the concept is appealing as an apparent attempt to fairly allocate a tax burden on an "ability to pay" basis, the wisdom of the statute is for the Legislature and not the courts. *Thomas v. Kingsley, supra,* at 530.

Art. VIII, § I, *par.* 1(a) of the *New Jersey Constitution* provides:

(a) Property shall be assessed for taxation under general laws and by uniform rules. All real property assessed and taxed locally or by the State for allotment and payment to taxing districts shall be assessed according to the same standard of value, except as otherwise permitted herein, and such real property shall be taxed at the general tax rate of the taxing district in which the property is situated, for the use of such taxing district.

Plaintiffs do not dispute the power of the Legislature to tax real and personal property differently, and even to categorize the latter into classes, for greater or lesser burdens of the cost of government. *Switz v. Kingsley,* 37 *N. J.* 566, 586 (1962). This being so, it is of no moment whether the capitalized assets represented by the replacement revenues are deemed to be personal property or some other undefined kind of property, since they certainly are not real property. The requirements of the second sentence of *Art.* VIII, § 1, *par.* 1(a) of the *New Jersey Constitution* (1947) cited above, only pertains to real property assessments. Accordingly, all that is required in the context presented, to preclude invalidity under New Jersey's "general laws and uniform rules" constitutional provision, or the due process and equal protection

clauses of the Fourteenth Amendment to the *United States Constitution,* is that practical equality be achieved. *Switz v. Kingsley, supra,* at 589; *General Electric Co. v. Passaic,* 28 *N. J.* 499, 509 (1958).

Since it is obvious from the wording that *N. J. S. A.* 54:11D–7 is general and uniform in its overall applicability, it is clear that plaintiffs' complaints relate to the component parts thereof. In summary, the statute provides a two-part formula whereby, for each municipality, (a) the preceding year's replacement revenues are divided by the preceding year's general tax rate to obtain an "assumed assessed value" thereof, and (b) the latter is "equalized" by dividing same by the ratio of aggregate assessed value to aggregate true value of the municipality's real property for the current year as determined by the county board of taxation. The alleged deficiences fall into two categories: first, that the assumed assessed values are illusory, and second, that the use of 1964, 1965, 1966, and 1967 base years personal property tax figures in calculating minimum replacement revenues and allocating county tax costs, induced inequality.

As already noted, the assumed assessed value of replacement revenues represents a theoretical capitalization of revenues produced by four state taxes. Since the Legislature undisputedly has the power to determine the portion of governmental costs to be borne by real property *vis-a-vis* other property, there is nothing inherently invidious in the (a) and (b) portions of the *N. J. S. A.* 54:11D–7 formula that converts the replacement revenues into capitalized assets and then equalizes the same with real property assessments in the municipalities. It is true that other methods could have been used, but this is a matter for the Legislature and not the judiciary. Illusory as the assumed assessed values may be, in the sense of familiar concepts of real and personal property, they represent actual assets of each municipality and thus qualify for the burden of county taxes that the legislature determines to impose thereon. Whatever constitutional problems might arise in the event allocated shares of county

taxes exceeded the actual replacement revenues, are not reached, of course, since such is not the situation in the instant case.

*N. J. S. A.* 54:11D-2 and 5 provide minimum replacement revenues each year for every municipality in the highest amount of the taxes received by each municipality upon assessments of personal property used in business in 1964, 1965, 1966 or 1967. Plaintiffs correctly point out that the result of this use of different figures from different base years, for the various municipalities, together with the fact that personal property assessments were "equalized" for 1965, 1966 and 1967, but not for 1964, results in an absence of rational relationship or comparability of the respective figures with real or personal property assessments of any municipality for any given year. Again, the desirability of this is a matter for the Legislature, and it is true that other methods could have been used, as Clifton's assessor testified. But the State Constitution does not require the particular relationship or comparability that plaintiffs herein assert to be desirable. *Thomas v. Kingsley, supra,* is almost directly in point, and it is clear that the constitutional tests of adequate public need and reasonably appropriate legislative treatment are met. It is self-evident that the replacement revenues may fairly bear a portion of county taxes, and the capitalized asset values thereof are clearly comparable among themselves despite their derivation from various base years. Again, it is noted that plaintiffs did not show that any municipality's share of county taxes, allocated to the assumed assessed value of replacement revenues, exceeded the actual replacement revenues, so no possible constitutional problems arising from any such situations, are reached.

*N. J. S. A.* 54:11D-7 is therefor constitutional and judgment will be entered in favor of defendants.